HAMBURG–AMERICAN LINE v. ATLANTIC TRANSPORT CO.

(Circuit Court of Appeals, Third Circuit.    October 21, 1916.)

No. 2103.

EXPLOSIVES ⊂⇒7—INJURIES FROM ACCIDENTAL EXPLOSION—LIABILITY OF STEVEDORE.

A stevedoring company *held* not liable to a steamship company for damage caused by the explosion of "Knallkorke," or explosive corks for use in toy pistols packed in cases, when being unloaded from plaintiff's steamer as part of a cargo shipped from Germany; there being no evidence that defendant was negligent in the handling of the cases, and it appearing that it was not warned by plaintiff and had no knowledge

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that the cargo was dangerous to handle, and that in fact it had never been so considered, being permitted to be carried on German governmental passenger trains.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. .§ 3; Dec. Dig. ☞7.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action at law by the Hamburg-American Line against the Atlantic Transport Company. Judgment of compulsory nonsuit, and plaintiff brings error. Affirmed.

Howard M. Long, of Philadelphia, Pa., and A. L. Brougham, of New York City, for plaintiff in error.

Charles Biddle and Frank P. Prichard, both of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY; Circuit Judges.

BUFFINGTON, Circuit Judge. The Hamburg-American Line, a corporation of the free city of Hamburg, Germany, brought this action against the Atlantic Transport Company, a corporation of West Virginia, engaging in stevedoring, to recover $150,497.78 damages shown to have been caused by the alleged negligence of the said stevedore in unloading a cargo from the plaintiff's freighter, Arcadia. On the trial of the cause, the court below, after hearing the plaintiff's evidence, granted defendant's motion for a compulsory nonsuit. On its subsequent refusal to take off the same, this writ of error was taken. No opinion was filed by the trial judge, but the grounds for his granting the nonsuit were stated in terse form, viz.:

"Under the evidence in this case, I am satisfied that the plaintiff has not made out a case to go to the jury. The result here, and the damages which flowed from this result, were not those which would have been reasonably anticipated under the circumstances, and the evidence shows conclusively, to my mind, that whatever knowledge was brought home to the defendant in this case, was equally, if not more fully, known to the plaintiff. I will enter a nonsuit."

An examination of the proofs shows the court committed no error in so holding. Such proofs tended to show that the Arcadia, en route from Hamburg, docked at Philadelphia, and her cargo was being unloaded by the defendant company. In such cargo, and stowed in a separate hatch, were 14 cases of explosive corks for use in toy pistols. These corks were packed in cotton in small pasteboard boxes, a number of which were placed in wooden boxes about three feet by two and two and a half. In a central hole in the small 'end of the cork was a small explosive mixture of phosphorus, chlorate of potash, and glue. When this disk was struck by the plunger of the toy pistol, an explosion followed. The toy charge is aptly described in English as "explosive corks," and in German as "Knallkorke." In and of itself the explosive in a single cork is harmless, the mixture being that commonly used in packages of candy and bonbons, where

it is exploded when the bonbon covering is ruptured by a sudden jerk. But collectively, as the outcome proved, their explosive force was tremendous, as shown by the havoc done this steel steamer. There is no proof in the cause of any such collective explosion of them ever having occurred before, or that they were regarded as a dangerous article to transport. They were in common use in Germany for upwards of 20 years, but were new to this country.

These particular cases were packed for shipment according to German government traffic regulations, and as such were entitled to be carried on German government railroad passenger trains either as express or mail matter. In that regard the head of a large express and forwarding business in Hamburg testified on behalf of the plaintiff as follows:

"I knew each one of the Knallkorke contained a small amount of explosive substance in the bore hole of the cork; but I was not informed and did not know that there was any danger of the contents of the cases exploding while in transit or while being handled, and I was not warned in any way that the Knallkorke, as packed for shipment and as shipped by me, were explosive or otherwise dangerous; but, on the contrary, I was informed on May 13, 1908, by the manufacturer, G. Wolff, of Rixdorf, that the goods, as packed for shipment, were not explosive (Nicht explodierbar). I had information that each one of the Knallkorke, separately, was explosive if the explosive substance in the bore hole of the cork was struck by the metal plunger of the Knallfix tube; but such explosion was not violent or dangerous, and I did not have any information that the Knallkorke could be exploded en masse while in the cases in which they were packed, and did not know the cases were in any way explosive or otherwise dangerous, but was informed that they were nonexplosive. As stated above, some of the railroad bills of lading carried the information that the cases contained Knallkorke manufactured and packed according to the railroad traffic regulations; all of them carried the information that the cases contained Knallkorke; and the shipments all came to Hamburg over the government railroads, thus indicating to me proper compliance with the railway traffic regulations. At least one of the earlier bills of lading covering shipments to me from the manufacturer, Wolff, of Rixdorf, carried the information that the cases of Knallkorke were nonexplosive describing the goods as 'Knallkorke'—'Nicht explodierbar,' over the signature of the manufacturer properly authenticated. The word 'Knallkorke' means 'detonating corks,' or 'explosive corks'; but anybody who knew what the article was would not have believed that the Knallkorke, when packed for shipment, belonged to that class of explosive goods which are dangerous to life or property."

The proofs further show that the name "Knallkorke" conveyed no intimation of explosive quality. Thus Ross, a United States custom house examiner of 15 years' experience, testified he saw the name on the manifest when he checked up the cargo with the chief officer of the Arcadia, that he had never heard of the word "Knallkorke" before, and that it had no significance to him. He testified the cases were marked "Vorsicht," which means "Look out," "careful," "handle with care," glass, crockery, toys, etc.

The plaintiff's proof also was that, beyond the name "Knallkorke" and the customary handling warnings, no notice was given to the stevedores by the Hamburg Company that these cases contained explosive articles. The absence of such notice and the omission to give it by the plaintiff is shown by its witness Detweiler, the chief clerk of the defendant company, who received and examined the manifest and

cargo plan. He testified he saw the word "Knallkorke" in the manifest and bills of lading. In answer to the question whether he knew the meaning of the word "Knallkorke," he testified:

"I knew we had cargoes, shipments, very frequently; I knew that Knall was used in connection with Knall bonbons; those shipments came in very frequently, so I did not pay any particular attention to Knallkorke; it did not mean anything to me."

In that regard, Mr. Detweiler testified:

"In addition to the manifests, or when the manifests came in, I always look over them for dangerous cargo, inflammable stuff, which is sometimes carried; but it is always noted on there 'inflammable,' 'danger,' and stowed on the deck, or some mark of that kind, which calls our attention to it. Then we receive letters from the Hamburg-American Line, if there is any cargo on the steamer requiring special care or handling, or any special preparation for handling, that is to say, and shipment of heavy machinery, or bleach, which requires special cleaning hose, to be taken out, merchandise of that character, merchandise that requires special care or handling, we get a letter from the Hamburg-American Line, and notification is sent to the dock to Mr. Shell, the dock superintendent. Q. Did you get any letter from the Hamburg-American Line with reference to Knallkorke? A. We did not."

From these proofs it is clear the defendant had no notice of the explosive character of these corks, and there was nothing in the markings of the cases to lead it to expect that the consequences of careless handling of them would be anything beyond the breakage consequent on handling packages containing fragile goods. Instead, in that respect we must not overlook the fact that this is a suit by the steamship carrier, and that, if the facts proved brought home to the stevedore company knowledge or notice of the explosive character of these packages of corks, the steamship company was equally apprized of the fact; and if, with such knowledge, it failed to take any precaution to prevent explosions, it would seem to follow that it directly contributed to the accident. If, however, it be said the facts were such as to put the defendant on inquiry as to the explosive character of these corks, the proofs are clear that such inquiry would not have resulted in any information that the shipment was explosive. In that regard the evidence is the manufacturers claimed they were nonexplosive; that they were received on the German government railways as mail and express matter; that they were transported by express carriers; and that on a conference and inquiry by five steamship companies, including the plaintiff, to determine their character as freight, no suggestion was made that they were explosive. In the absence, therefore, of any such facts, notice, or knowledge as warned the steamship company of the explosive character of these shipments, it is manifest the stevedore company was visited with no such knowledge and the court below was right in saying:

"Whatever knowledge was brought home to the defendant in the case was equally, if not more fully, known to the plaintiff."

In the absence of such knowledge, and the defendant having no reason to anticipate an explosion from handling these cases, it is clear to us that no grounds were laid for charging the defendant

with negligence, and consequently for the recovery of damages for an explosion which the defendant company had no reason to anticipate, and against which it was not required to guard with that measure of high care which the handling of explosives calls for on the part of those engaged in such work. The proofs tend to show defendant's longshoremen did not know the significance of the German markings to handle with care. We may concede, for present purposes, it was the duty of a stevedore company, engaged in handling foreign trade, to take notice of such markings and have its employés observe them, and we may concede the evidence in this case tends to show these packages were handled as ordinary rough freight, and that, if thereby fragile inclosures were broken, a stevedore company could be held responsible for negligence. But from the evidence before us it would seem that the real cause of this explosion was not concussion or the rough handling of the package, but that a stevedore's hook may have penetrated the box cover of the soft wood and its abrasion set off the explosive. In that regard the proof is that subsequent experiment showed that heavy concussion would not, but any light friction would, explode these Knallkorke. In that regard the testimony of a witness called by the steamship company was:

"Q. Describe those tests. A. The first test was by friction; that is, I put a number in a box, say 12 or 14, and I just touched the center one, and they all exploded. Q. With what? You tested it with what? A. Just a piece of wire, to abrade the surface the least bit, just abraded the surface the least bit, and it exploded. Q. You touched the surface of the explosive substance in the hole? A. Yes, sir. Q. When that exploded, what happened to the rest of them alongside of it? When that one you touched exploded, what happened to the rest of them alongside of it? A. They all exploded. They were sensitive to the shock of the first one. Q. They exploded, too? A. Yes, sir. Q. What other tests did you make? A. Then I tested them by heat. Q. What did you find? A. I found the substance went off about 300 and 302 by slowly rising temperature. Q. 302 degrees of what? A. Fahrenheit. Q. Did you make any other tests of the substance? A. I made a test before the coroner. Q. I mean did you make any other tests to find out whether they exploded by concussion or not? A. Yes; I tried them with a hammer, but the top of the cork acted as a cushion. Q. They did not explode then? A. No."

On the whole, we are of opinion the court below committed no error in granting and refusing to take off the nonsuit. In announcing such conclusion, we are not unmindful of the conclusion reached by the Supreme Court of Pennsylvania in Martin v. Atlantic Transport Co., 237 Pa. St. 15, 85 Atl. 29; but we note the fact that that case involved the liability of the stevedore company to its employés, to whom it owed a duty, while here the suit is by the steamship company, to which the stevedore company owed no such duty. The proofs, as well as the questions involved, in the two cases are different.

The judgment below is affirmed.